UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JASON TILLERY and<br>JERRY LANIER,<br><br>  Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., et al.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)  No. 3:23-cv-00203<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Alleging that while they were in custody, they were assaulted at different facilities, by different inmates at those facilities, on different dates, Jason Tillery and Jerry Lanier bring this case under 42 U.S.C. § 1983 and various state tort claims. They assert that because all defendants are connected to CoreCivic, Inc., and CoreCivic Tennessee, LLC ("CoreCivic") their claims can proceed in one lawsuit. Federal Rule of Civil Procedure 18(a) limits joinder of claims. Federal Rule of Civil Procedure 20(a) limits joinder of parties. And, Federal Rule of Civil Procedure 21 authorizes severance of claims when parties are improperly joined in a single case. Applying those Rules, the Court finds no "logical connection" of Tillery's and Lanier's separate claims, notwithstanding their belief that CoreCivic's "long history of deliberate indifference" of "putting profits ahead of the safety and well-being of inmates" is responsible for the assaults that cause them injuries and the inadequate medical care they received. Amended Complaint at 8 ¶¶ 39 and 40. (Doc. No. 14 at 8). Accordingly, this case will be severed into two separate cases as Defendants seek in their Motion to Server Claims. (Doc. No. 22).

Tillery and Lanier allege two independent events.

Tillery alleges that he was an inmate at the Whiteville Correctional Facility ("WCF"), in Whiteville, Tennessee located in Hardeman County in the Western District of Tennessee. In March 2022, when no guards were present, he was assaulted by another inmate and suffered multiple broken bones in his face. After receiving medical treatment in Memphis, he returned to WCF and was assigned first to disciplinary segregation and then to the general population. There he was assaulted by another inmate and a different inmate tried to rape him. He alleges the medical care he received was inadequate and his assaults were the result of CoreCivic's inadequate staffing. He sues CoreCivic's Medical Director, Dr. Keith Ivens; Correctional Medical Associates, Inc. responsible for healthcare at WCF as well as T. Robinson, a nurse at WCF and Dr. Elaina Rodela a physician at WCF, who supervised T. Robinson. He also sues the WCF Warden, Vince Vantell. Tillery was released from custody in late 2022.

In June 2022, while an inmate at Hardeman County Correctional Facility ("HCCF"), also located in the Western District of Tennessee, Lanier was attacked by Samuel McMahan, another inmate. No guards were present when McMahan approached Lanier from behind and beat him with a metal pipe. Lanier fought back and the two fought for several minutes until guards arrived. Lanier alleges that twelve inmates saw the fight and signed statements that Lanier acted in self-defense. One of the twelve was McMahan, who wrote "I was wacked out of my mind and the voices were telling me to hurt Jerry Lanier." (Doc. No. 14 at 6). Nevertheless, Lanier was disciplined for fighting. His request to transfer to another prison was denied. He sues the HCCF Warden, Hilton Hill, Jr. and his successor, Jerry Wardlow; supervisors Joshua Carter and Joshua Morton as well as the medical provider, Correctional Medical Associates, Inc., and CoreCivic's Medical Director Dr. Keith Ivens.

Tillery and Lanier believe they are the victims of CoreCivic's long standing corporate policies of "putting profits ahead of the safety and well-being of inmates." (Doc. No. 14 at ¶40). Starting at least in 2016 to the present, they point to lawsuits, state and federal investigations, settlement of lawsuits throughout the United States, inmate deaths and media reports describing CoreCivic's "pattern and procedure of providing inadequate medical care at its facilities." (Doc. No. 14 at ¶ 52). Tillery and Lanier sue CoreCivic; its CEO, Damon Hininger; and COO, Patrick Swindle.

As it pertains to WCF and HCCF, Tillery and Lanier make specific allegations about staffing and medical care. At WCF they allege in 2017 WCF needed "79 officers to cover 17 positions during a shift, but on average the facility provided only 57 officers per shift." (Doc. No. 14 at ¶ 48). HCCF also suffered from understaffing, but CoreCivic's records were "so incomplete that it was not possible to determine the accuracy of staffing levels." (Id.) Plaintiffs believe that both facilities remained understaffed in 2023. (Id.) As for medical care, Plaintiffs allege Defendants have a "pattern and practice of providing inadequate medical care at its facilities," (id. at ¶52) based upon settlement of a federal lawsuit. (Id.) All Defendants have been "deliberately indifferent to the dangers posed by understaffing and inadequate medical care." (Id. at ¶57).

Defendants' motion to sever this lawsuit is governed by Federal Rules of Civil Procedure 18, 20 and 21 because Tillery and Lanier bring multiple claims against multiple defendants in the same lawsuit. Rule 18(a) allows Tillery and Lanier to assert "as many claims as [they have] against any opposing party," so their separate 1983 claims and state tort claims against specific Defendants are allowed. But Rule 20(a) controls the claims multiple plaintiffs can bring a single action. Notwithstanding Rule 18(a), multiple plaintiffs can sue multiple defendants in a single action only if they bring a claim "arising out of the same transaction, occurrence, or series of transactions or

occurrences, and . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).  Rule 21 allows severance if plaintiff has misjoined parties in a single action.

The Sixth Circuit has repeatedly identified five factors to determine if plaintiffs' claims arise out of the same transaction, occurrence or series of transactions or occurrences.  Parchman v SLM, Corp., 896 F.3d 728 (6th Cir. 2018); see also Mann v Mohr, 802 Fed. App'x 871 (6th Cir. 2020).  Those five factors are:

1. whether the claims arise out of the same transaction or occurrence;
2. whether the claims present some common questions of law or fact;
3. whether settlement of the claims or judicial economy would be facilitated;
4. whether prejudice would be avoided if severance were granted; and
5. whether different witnesses and documentary proof are required for separate claims.

Parchman, 896 F.3d at 733; Mann 802 Fed. App'x at 875.  Application of these factors will disclose whether there is a "logical relationship."  LASA Per L'Industria Del Marmo Societa Per Azioni of Lisa, Italy v. Alexander, 414 F.2d 143, 147 (6th Cir. 1969), or common nexus, Mann, 802 Fed. App'x at 876, to justify one lawsuit with multiple plaintiffs, defendants and claims.

When these factors are applied in a civil rights case, courts frequently focus on:

[T]he time period during which the alleged acts occurred; whether the acts. . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.

Nali v Michigan Dep't of Corrections, 2007 WL 4465247 (E.D. Mich. 2007) (citing Brown v Worthington Steel, Inc., 211 F.R.D. 320, 323–25 (S.D. Ohio 2002)).  Alleging violations under § 1983, the district court in Mann approved the report and recommendation severing an inmate's religious discrimination claims from his racketeering and general "deprivation of civil rights" claim because the claims were unrelated and named different defendants.  Mann, 802 Fed. App'x at 875.  Similarly, the time period of events was critical to the decision to sever in Carter v. Oakland

County Sheriff's Department, 2015 WL 778365 (E.D. Mich. 2015). In that case, three inmates alleged violations of § 1983 arising from their arrests on three different dates by three different officers at three different locations. (Id. at *1.) Relying specifically upon the various time periods, officers involved, and geographical locations, the Court concluded that severance was required. The same rationale justified severance in Proctor v. Applegate, 661 F. Supp. 2d 743 (E.D. Mich. 2009) because the inmates' allegations of violations of § 1983 occurred at different locations. (Id. at 779).

Tillery and Lanier raise claims that have no logical or common factual connection. The alleged assaults occurred at different locations and facilities with none of the same witnesses or officials allegedly involved. They occurred on different dates: March 2022 for Tillery and June 2022 for Lanier. Both were assaulted by inmates, but by different inmates. There are no common witnesses to the assaults and the facility defendants had responsibilities limited to their particular facility. It is unlikely that there will be any documentary proof overlap. Severance will insure there is no prejudice at trial to any parties. While the elements to establish a § 1983 violation are the same, the evidence relevant to each claim will be unique. There is no logical connection or common nexus to conclude that Tillery's and Lanier's claims arise from the same transaction or occurrence.

Plaintiffs' opposition to severance depend solely on what they label as the "common denominator" between Tillery's and Lanier's claims: "that CoreCivic . . . has a pattern and practice of violating the civil and constitutional rights of inmates in its prisons through chronic understaffing, medical malpractice, and the resulting gross negligence and negligence that ensues." (Doc. No. 27 at 1). Plaintiffs rely upon Allstate Ins. Co. v Electrolux Home Prod, Inc., 216 WL 6995271 (N.D. Ohio 2016), a products liability case involving six claims that relied on the same

flawed design in dryers to establish the logical connection to satisfy the same transaction and occurrence test. (Id. at 5). Likewise here, Plaintiffs argue CoreCivic's pattern and practice of understaffing and inadequate medical care is the logical connection to avoid severance. What Plaintiffs overlook is that proof of the defective design in the dryers was an essential common element to succeed on their product liability claim. Tillery and Lanier must each establish at trial that each Defendant acted under color of state law, to deprive them of a federal right and that a defendant's actions or inaction caused injury. Littler v. Ohio Ass'n of Pub. Sch. Emps., 88 F.4th 1176 (6th Cir. 2023). CoreCivic's policies on understaffing and medical care, as alleged by Plaintiffs, is only possible evidence to establish that they were deprived of their federal rights. Each Plaintiff must still prove that the corporate policies were active at WCF and HCCF and that those policies were the proximate cause of each Plaintiff's injury. McKinley v City of Mansfield, 404 F.3d 418, 438 (6th Cir. 2005)(tort causation concepts informs the causation analysis in § 1983 claims). This will require the jury to make separate fact determinations for each Plaintiff.

This of necessity does not create the logical or common factual connection to avoid severance. To the contrary, it supports severance because what the Defendants did or did not do must be measured against each Plaintiff's particular proof at trial. Plaintiffs' claims simply do not come close to arising out of the same transaction or occurrence to justify a single case.

The Defendants' motion is granted. An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

6